**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.   GREGORY L. SINGLETERRY,   )<br>)<br>Plaintiff,   )<br>)<br>vs.   )<br>)<br>1.   SCHLUMBERGER TECHNOLOGY   )<br>CORPORATION, and   )<br>)<br>2.   SMITH INTERNATIONAL, INC.,   )<br>)<br>Defendants.   ) | CASE NO. CIV-14-778-M |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is a civil action which asserts a cause of action for employment discrimination and retaliation prohibited by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); and for discrimination and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). Plaintiff also asserts a state law claim for retaliatory discharge in violation of the Oklahoma Workers' Compensation Act at 85 O.S. § 341.

### II. PARTIES

2. Plaintiff, Gregory L. Singleterry ("Singleterry" or "Plaintiff"), is an individual residing in Oklahoma City, Oklahoma. At all times relevant herein, Plaintiff was a citizen and resident of the United States and the state of Oklahoma. Plaintiff was

employed and discharged from employment by Defendants in Oklahoma City, Oklahoma, within the Western District of Oklahoma.

3. Defendant, Schlumberger Technology Corporation ("Schlumberger"), is a Texas for profit corporation with its principal place of business and headquarters in Houston, Texas.

4. Defendant, Smith International, Inc. ("Smith"), is a Delaware for profit corporation with its principal place of business and headquarters in Houston, Texas.

5. Schlumberger and Smith ("Defendants") merged in August 2010, and were either a single integrated enterprise in relationship to the employment of Plaintiff; or were joint employers of Plaintiff, who controlled his job duties, work rules, policies and procedures, and terms and conditions of employment.

6. Each Defendant was at all material times, either singularly or jointly, a covered employer under the ADA, FMLA, and the Oklahoma Workers' Compensation statute; and was subject to the requirements imposed upon employers thereunder.

### III. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction under 28 U.S.C. § 1331; 42 U.S.C. § 2000e-5(f)(3) and § 12117(a); and 29 U.S.C. § 2617(a)(2). This Court has jurisdiction over the state law claim for retaliatory discharge pursuant to 28 U.S.C. § 1367(a), and also based upon diversity jurisdiction under 28 U.S.C. § 1332.

8. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and § 12117(a); and 28 U.S.C. § 1391(b) and (c).

## IV. CONDITIONS PRECEDENT

9. On or about January 7, 2014, Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants discriminated and retaliated against him based upon his disability (EEOC Charge No. 564-2014-00357). On or about January 15, 2014, the EEOC mailed a notice of charge to Defendants.

10. The EEOC issued Plaintiff a notice of right to sue dated April 23, 2014, and he is filing his Complaint herein within ninety (90) days of his receipt of said notice. Plaintiff has exhausted his administrative remedies as to his discrimination and retaliation claims based upon his disability.

## V. FACTUAL ALLEGATIONS

11. Defendants are employers engaged in interstate commerce and activities affecting interstate commerce. Defendants have numerous facilities at various locations in the United States which produce, market and/or distribute their products and services throughout the United States to the oil and gas industry. Defendants employ over five hundred (500) employees at their various facilities and locations in the United States.

12. Defendants are covered employers under the ADA and FMLA because of the number of employees they have had, and because they have consistently engaged in interstate commerce within and between numerous states in the United States at all times since Plaintiff was employed by them. Defendants have had over fifty (50) employees within 75 miles of Plaintiff's place of work for each week during 2012, 2013, and year-

to-date for 2014.

13. Plaintiff was initially employed by Defendants on or about March 12, 2012, as a Field Sales Representative in Oklahoma City. Plaintiff was qualified to perform his job duties of Field Sales Representative based upon his prior work experience, his training, and because he actually performed in a satisfactory manner his assigned job duties for Defendants.

14. Plaintiff's immediate supervisor in August 2013 was Gerre Voden III ("Voden") who was located at 6912 S. Bryant in Oklahoma City. Defendants' Human Resources representative for such location was Vincent Luley.

15. In approximately August 2013, Plaintiff reported to his supervisor Voden that he had mold in the air conditioning and vent system of his company-assigned vehicle, a 2012 Dodge International 150. Plaintiff told Voden that as a result of driving the vehicle and being exposed to mold, he had developed health problems, including sinus problems and chronic headaches.

16. Plaintiff's vehicle was taken to a Dodge dealership in Yukon, Oklahoma, and the evaporator unit for the air conditioning system was removed and replaced.

17. In early October 2013, Plaintiff had to have nasal surgery as a result of the mold exposure, and he developed a systemic fungus infection as a result of the mold exposure.

18. From October 14 through October 18, Plaintiff was hospitalized for testing and treatment due to his illness. Before being admitted and while he was in the hospital,

Plaintiff kept Voden fully advised as to his condition and whereabouts through phone calls and text messages.

19. After being released from the hospital, Plaintiff requested an additional three (3) days of leave, which was granted. On Wednesday, October 23, 2013, Plaintiff was required to report to Voden's office. Voden told Plaintiff he was being suspended for a week until he figured out what he wanted to do.

20. The next day, on October 24, Voden told Plaintiff not to worry about his job, that he needed to get well, and that Defendants did not want him back to work until he was 100% well. He also told Plaintiff that he would send two employees over to pick up Plaintiff's company-assigned vehicle and to hand deliver Plaintiff short-term disability papers for him to fill out.

21. Defendants' employees, David D'Airs and Aaron Mosser, arrived at Plaintiff's residence later the same day and picked up the company vehicle and delivered short-term disability paperwork to Plaintiff. Voden had filled out the employer's portion of the form and clearly understood that Plaintiff was disabled. On the form which Voden signed on 10/24/13, he stated that Plaintiff's last day worked was 10/4/13 and his first day of absence was 10/7/13. Voden further checked "No" for the question as to whether the employee's job could be modified/accommodated, and checked "No" for the question asking whether return to work had been discussed with employee.

22. On October 24, Plaintiff was working from his home returning phone calls from clients and answering their questions, as he had been doing that week after his

release from the hospital**.** Voden told Plaintiff to cease doing any work and he shut down Plaintiff's access to Defendants' company e-mail system.

23. On Friday, November 1, 2013, Plaintiff was told to come to Voden's office and bring his computer. Plaintiff asked Voden whether he could take leave under the FMLA and Voden stated he was being terminated for poor work performance.

24. The reasons given by Defendants for Plaintiff's discharge are pretextual. Voden told Plaintiff he was terminated for poor work performance.  Plaintiff, however, had received a favorable evaluation and was one of the top salesmen in his area. In Defendants' written response dated February 21, 2014, to the EEOC, they told the EEOC that Plaintiff "...was terminated solely for performance issues, job abandonment, and failure to keep the company informed of his whereabouts/intentions to return to work." Defendants further told the EEOC that when Plaintiff "...did not report to work as expected on October 24, his manager and HR Manager called and requested Mr. Singleterry (Plaintiff) come to the office to discuss his situation. He agreed to do so, but failed to appear."

25. The story told to the EEOC is pure fabrication. Plaintiff did not abandon his job. Voden knew of Plaintiff's whereabouts at all times. Voden notified Plaintiff on October 24, 2014, that he was being moved to short-term disability. Voden had short-term disability papers which he had prepared, signed, and dated on October 24, 2013, delivered in person to Plaintiff at his residence that same day. Voden also had Plaintiff's company pickup truck removed from Plaintiff's possession that day and gave Plaintiff

the reason that he did not want Plaintiff driving the company vehicle until he was 100% well because of liability issues.

26. After his discharge, Plaintiff's former job duties were assigned to one or more non-disabled employees, employees who did not need leave under the FMLA, and/or employees who did not have a pending workers' compensation claim. Alternatively, Plaintiff was discharged under circumstances in which non-disabled employees, employees who did not need leave under the FMLA, and/or employees who had not reported an on-the-job injury would not have been.

27. All adverse actions described herein, and taken by Defendants against Plaintiff, including without limitation, his discharge, were done intentionally, willfully, or in reckless disregard for the legal rights of Plaintiff. Defendants have written policies stating it will not discriminate or retaliate against its employees because of disability, or for taking leave under the FMLA, or for reporting an on-the-job injury. Nonetheless, Defendants willfully and knowingly took adverse employment-related actions against Plaintiff because of his disability, to prevent him from taking leave under the FMLA, and/or in retaliation because of his reporting an on-the-job injury.

28. At the time of his discharge, Plaintiff was paid at the rate of approximately $74,500 per year. In addition, Plaintiff received fringe benefits, including, without limitation, medical and retirement benefits.

29. As a result of Defendants' wrongful actions, Plaintiff has suffered a loss of employment; loss of career path and seniority; loss of compensation and benefits; and

compensatory damages, including, without limitation, those for humiliation, loss of dignity, loss of enjoyment of life, worry, stress, and anxiety. The total amount of such losses and damages exceeds $75,000, exclusive of interest and costs.

## VI. FIRST CAUSE OF ACTION: VIOLATION OF ADA

30. Plaintiff incorporates hereunder by reference paragraphs 1-29, as set forth above.

31. Plaintiff is protected under the ADA from employment discrimination based upon his disability. Plaintiff was disabled due to sinusitis, chronic headaches, dizziness, vision changes, confusion, anxiety, loss of appetite, profuse sweating, and systemic fungus infection. Further, Plaintiff required nasal surgery and was subsequently hospitalized due to his illness. Defendants had knowledge of Plaintiff's disabilities, surgery, and hospitalization. Defendants discriminated against Plaintiff because of his disability by denying him reasonable accommodation, suspending him, and discharging him.

32. Plaintiff requested reasonable accommodation, which was either not timely provided or was denied by Defendants. Reasonable accommodation requested by Plaintiff included the timely remediation of mold in his truck, being allowed to take leave under the FMLA, being denied short-term disability, being denied the opportunity to work a reduced number of hours and/or work at home while recuperating, and being denied time off for medical treatment, therapy, and recovery.

33. Defendants discriminated against Plaintiff by taking the adverse actions against him described above, including, without limitation, terminating him from employment because of his disability, record of disability, or Defendants' perception that he was disabled, in violation of the ADA. As a result of Defendants' adverse actions, Plaintiff suffered the losses and damages described in ¶ 29, above.

34. Defendants' actions in violating the ADA were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder.

35. Plaintiff is entitled to all remedies and relief provided for a violation of the ADA, including, without limitation, back pay, reinstatement or front pay, compensatory and punitive damages, and a reasonable attorney's fee in bringing this action, as well as pre-judgment and post-judgment interest.

## VII.  SECOND CAUSE OF ACTION: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

36. Plaintiff incorporates hereunder by reference paragraphs 1-35, as set forth above.

37. Plaintiff had to miss work beginning in October 2013, due to serious medical conditions. Plaintiff informed Defendants that he needed to take time off for treatment beginning in October 2013 due to surgery he had in early October, his hospitalization from October 14 through October 18, and his serious medical conditions.

38. Plaintiff was an eligible employee as defined under the FMLA, and was entitled to all rights and benefits extended to eligible employees under the FMLA.

39. A significant or motivating factor in Defendants' decision to suspend Plaintiff and ultimately discharge him was to discriminate against him because he needed medical leave under the FMLA, and to interfere with his ability to take such leave and future leave under the FMLA.

40. As a result of Defendants' wrongful actions against Plaintiff in violation of the FMLA, Plaintiff suffered the losses and damages described in ¶ 29, above. Defendants' violation of the FMLA was knowing, intentional, and willful. Plaintiff is entitled to all remedies provided under the FMLA for Defendants' violation of said statute, including, without limitation, liquidated damages.

### VIII. THIRD CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION OF THE OKLAHOMA WORKERS' COMPENSATION ACT, 85 O.S. § 341

41. Plaintiff incorporates hereunder by reference paragraphs 1-40, as set forth above.

42. Beginning in approximately August 2013, Plaintiff informed Voden that he was suffering from headaches, dizziness, and other problems due to his on-the-job exposure to mold from his company truck provided by Defendants.

43. In September 2013, the air conditioning evaporator unit and expansion valve on Plaintiff's company truck were replaced. Plaintiff sustained an occupational illness and/or injury due to his exposure to the mold in his vehicle, and he developed a systemic fungus infection.

44. Plaintiff had required nasal surgery in early October 2013, and was

hospitalized from October 14 through October 18 for further testing and treatment. Thereafter, Plaintiff requested additional time off to recover from his illness.

45. On or about October 24, 2013, Voden told Plaintiff he was being placed on temporary disability due to his illness and told him he should stay off work until he made a full recovery and was at 100%.

46. On November 1, 2013, Voden told Plaintiff to come from his home to Voden's office. When Plaintiff did so, he was summarily discharged while still off work due to temporary disability. Defendants wrongfully discharged Plaintiff in violation of 85 O.S. § 341, the relevant statutory law in effect at the time.

47. Plaintiff is entitled to recover all reasonable damages which he sustained, both actual and punitive, under 85 O.S. § 341.E.

## IX. JURY TRIAL REQUESTED

48. Plaintiff is entitled to a jury trial under all federal and state law claims, and he hereby requests a jury trial.

## X. PRAYER FOR RELIEF

49. Plaintiff prays for judgment as follows:

    A. Payment of back wages, benefits, and compensation;

    B. Reinstatement to his former job position, or alternatively, appropriate future pay, including all wages, benefits and compensation;

    C. All other compensatory damages, including, but not limited to, those for humiliation, loss of dignity, loss of enjoyment of life, worry,

stress, and anxiety;

D. Punitive or exemplary damages;

E. Liquidated damages;

F. Declaratory and injunctive relief as appropriate;

G. Pre-judgment and post-judgment interest; and

H. Attorney's fees, costs and such other and further relief as the Court deems reasonable and proper.

          s/Raymond C. Durbin
          OBA No. 2554
          601 N.W. 13th Street
          Oklahoma City, Oklahoma 73103-2213
          Phone:   (405) 521-0577
          Fax:   (405) 525-0528
          Email:   durbinlaw@flash.net

          ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED.**
**JURY TRIAL DEMANDED.**